**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Dan L. Frandson and Patricia E. Frandson, | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING SUMMARY** |
| | ) | **JUDGMENT IN FAVOR OF** |
| vs. | ) | **DEFENDANT** |
| | ) | |
| Oasis Petroleum North America, LLC, | ) | Case No.  4:10-cv-092 |
| | ) | |
| Defendant. | ) | |

Before the court are cross-motions for summary judgment.  For the reasons set forth below, the court grants defendant's motion and denies plaintiffs' motion.

## I.    BACKGROUND

Both parties contend the material facts are undisputed.  After careful consideration, the court agrees - at least to the extent of the court's ruling.  What follows is a recitation of the facts, not all of which are material to the court's decision.

Dan and Patricia Frandson are part owners of mineral interests located in Mountrail County, North Dakota.  On March 30, 2005, the Frandsons entered into an oil and gas lease covering approximately 2,560 gross acres with John Holt, whose interest was later acquired by defendant Oasis Petroleum North America, LLC ("Oasis").  The parties used a standard form lease to which they attached an exhibit that contained a number of specifically negotiated terms, including the following option for extension of the lease:

> Lessee has the right and option to extend this lease for an additional three (3) years beyond the 30th day of March, 2010, by remitting to the Lessor on or before the 30th day of March 2010, an amount of $75.00 per net mineral acre, in and under said lands as Lessee elects to exercise under this option.  Such amount shall be paid by certified check.

1

(Doc. No. 16-1, p. 3).  The focus of the present dispute is the requirement that the option be exercised by the tender of a "certified check."  This proviso was included at the Frandsons' request based upon a recommendation of their attorney.  (Doc. No. 18-1, dep. p. 17).

More than a month prior to the expiration of the option to renew, Oasis sent a letter by FedEx to the Frandsons dated February 10, 2010, stating, in relevant part, the following:

> Oasis Petroleum North American LLC ("Oasis") is the current owner of the Oil and Gas lease you executed with John H. Holt dated March 30, 2005.  In accordance with the option terms within the lease, Oasis is exercising its right to extend the current lease for an additional three years by payment of $75.00 per net mineral acre.  The leased lands are describe as within:
>
> [Description omitted]
>
> Enclosed is Oasis's check in the amount of $15,820.31 (210.9375 net mineral acres times $75.00) as total consideration for the three year extension.  Please acknowledge receipt of payment by signing and dating the bottom of this letter and return one copy for our records.
>
> Thank you for your cooperation.  Should you have any questions, please call Kelly Domingue at 713-574-6957.
>
> Yours very truly
> [Signature omitted]
> Kelly Dominque
> Land Administration Manager
>
> Dan L. Frandson and Patricia E. Frandson hereby acknowledge the three year extension and have received the above check as consideration.
>
> By:_____    By:_____
>
> Date:_____    Date: _____

(Doc. No. 16-2).

The check that Oasis forwarded with the letter was not certified.  (Doc. No. 16-3). Apparently, the land administrator for Oasis was aware of the check certification requirement, but

believed that certified checks were no longer available because Oasis's bank had stopped certifying

checks. (Doc. No. 16-8, dep. pp. 22-25). Oasis now concedes that some banks continue to certify

checks and that it would have been possible for Oasis to have obtained one.

The Frandsons received Oasis's letter and uncertified check on February 23, 2010. (Doc.

No. 18-2, dep. p. 19). On the next day or the day after, Patricia Frandson called Oasis and

questioned its land administrator about the right to continue the lease with respect to the acreage not

being held by production and was advised of the option language. Frandson did not say anything

about the check not being certified. When questioned in her deposition as to why not, she testified

she had not reviewed the lease before making the call. (Doc. No. 18-2, dep. pp. 20-22, 38).

After this initial phone call and during the five weeks until the March 30, 2010, deadline for

exercise of the option, the Frandsons held onto Oasis's check - neither cashing nor returning it - and

remained silent. During this same time frame, Oasis also took no action, including not following

up with the Frandsons as to why they had not countersigned and returned Oasis's letter

acknowledging their receipt of the check and the three-year extension. The explanation offered for

the lack of followup was that Oasis had obtained from FedEx a receipt confirming delivery of the

tender. (Doc. Nos. 16-8, pp. 41-46; 16-9, dep. pp. 73-76; 18-2, dep. pp. 22-23).

On April 23, 2010, the Frandsons sent a letter to Oasis stating the following:

> This letter is to officially notify you of our release from our 3-year contract
> extension. Our Oil and Gas lease gave you the option for a 3-year extension as long
> as we received a **certified** check before March 30, 2010.
> We did not receive a certified check from you by the March 30, 2010 deadline (or
> at all), as stated in our contract. Therefore, this lease no longer binds us and we are
> released from the contract extension.

(Doc. No. 16-5) (emphasis in original).  In response, Oasis took the position that it had validly exercised the lease option and filed an affidavit with the Mountrail County Recorder's Office on May 4, 2010, giving notice that the lease had been validly extended.  (Doc. No. 16-7).

The Frandsons then initiated this action seeking a declaration that the lease had not been effectively renewed as to the acreage not being held by production.  In addition, Frandsons also seek damages for slander of title, contending they have been unable to lease the acreage in question because of the affidavit filed by Oasis advising of the lease extension.

In its Answer, Oasis denies that the lease was not properly renewed and asserts the affirmative defenses of waiver and estoppel.  Oasis also brings a counterclaim seeking a declaration that the option to extend the lease was validly exercised and that title to the extended leasehold interest be quieted in its name.

Oasis has proffered evidence from a bank official that Oasis had sufficient funds in its account through at least March 30, 2010, to cover its uncertified check. (Doc. No. 20).  The Frandsons do not dispute this evidence.

## II.   DISCUSSION

### A.   Overview

Oasis acknowledges that its lease required the option to renew be exercised by tender of a certified check, but contends the requirement should not be enforced in this instance based upon the related, but yet distinct, arguments of waiver and estoppel.  In addition, Oasis argues that strict compliance can be excused based on general equitable principles.   For the reasons set forth below, the court concludes there was an implied-in-law waiver of the check certification requirement and that Oasis's tender was otherwise sufficient.  And, while these conclusions are dispositive of the

case, the court also agrees that Frandsons are estopped from claiming that Oasis's tender was insufficient.

### B.    Governing law

The law governing summary judgments is well known to the court and need not be restated in detail here.  E.g., Torgerson v. City of Rochester, 643 F.3d 1031, 1042-43 (8th Cir. 2011). Substantively, the parties agree North Dakota law governs since this is a diversity action.  E.g., Integrity Floorcovering, Inc. v. Broan-Nutone, LLC, 521 F.3d 914, 917 (8th Cir. 2008).  In applying North Dakota law, the court is bound by the decisions of the North Dakota Supreme Court.  Id.

### C.    Implied-in-law waiver under N.D.C.C. § 9-12-18

#### 1.    Introduction

Oasis argues that the Frandsons were required by N.D.C.C. § 9-12-18 to communicate a timely objection to its tender or be deemed to have waived their right under the option provisions of the lease to payment by certified check.  N.D.C.C. § 9-12-18 reads as follows:

> **§ 9-12-18. Offer of performance--Mode--Waiver of objections.**  The creditor must make objections to the mode of an offer of performance at the time it is made to the creditor. If this is not done, any objection which could have been obviated at that time is waived by the creditor's failure to make the same.

In support of its argument, Oasis cites in particular to the North Dakota Supreme Court's decision in Motschman v. Bridgepoint Mineral Acquisition Fund, LLC, 2011 ND 46, 795 N.W.2d 327 ("Motschman").

The Frandsons  disagree.  Among other things, they argue that § 9-12-18 does not apply to options nor, more generally, to any agreement that requires a specific mode of performance.  In support of their argument, Frandsons rely in particular upon the earlier North Dakota Supreme Court case of Nygaard v. Continental Res., Inc., 1999 ND 172, 598 N.W.2d 851 ("Nygaard").

For reasons discussed below, neither Motschman nor Nygaard are directly on point with respect to whether § 9-12-18 requires a timely objection when a tender of payment in exercise of an option does not specifically comply with the option's requirements.  Consequently, this court's duty is to predict how the North Dakota Supreme Court would resolve this question.  E.g., Integrity Floorcovering, Inc. v. Broan-Nutone, LLC, 521 F.3d at 917. In doing so, the court can rely upon other relevant state-court precedent, analogous decisions, considered *dicta*, scholarly works, and other reliable data.  Id.

Before addressing the applicability of § 9-12-18 to the facts of this case, it is helpful for purposes of context to first discuss two widely-accepted common law principles governing the payment of monetary obligations followed by the two North Dakota Supreme Court decisions that the parties argue are controlling.

### 2.        Common law principles governing tenders of payment

A generally-accepted common rule governing payment of monetary obligations is that, absent an agreement providing otherwise, an obligee can insist upon payment in legal tender or, as it is sometimes referred to, the "coin of the realm."  E.g., Margulus v. Mathes, 90 N.E.2d 254, 256 (Ill. App. Ct. 4th Dist. 1950);  Stein v. Shapiro, 176 N.W. 54, 64 (Minn. 1920); see generally 60 Am. Jur. 2d Payment § 21 (2nd ed. database updated Feb. 2012).  However, because use of checks and other commonly-accepted means of payment is so pervasive, there has developed a corresponding rule that use of one of these other methods of payment is sufficient to satisfy a monetary obligation unless the obligee demands payment in legal tender and allows reasonable time to procure it.  E.g., Gaunt v. Alabama Bound Oil & Gas Co., 281 F. 653, 655 (8th Cir. 1922); In re Pintree, 40 B.R. 131, 133 (Bkrtcy. S.D.N.Y. 1984); see generally Restatement (Second) of Contracts § 249 (1981); 86

C.J.S. <u>Tender</u> § 20 (database updated March 2012).  And, for sales of goods subject to the Uniform Commercial Code, the common law rule has been codified at N.D.C.C. § 41-02-59 (2-511).[1]

But what if there is an agreement in place that requires more than just the payment of money and specifically requires payment in cash or legal tender?  Is the obligee still required to object to a nonconforming tender or be deemed to have waived the contractual requirement?  Also, what if the agreement specifically requires some other mode of payment, such as a certified or cashier's check?  Further, does it make a difference whether the tender is to satisfy a contractual obligation or whether it is in acceptance of an offer or exercise of option?  With respect to these questions, the common law rules are not so clear.

For example, the <u>Restatement (Second) of Contracts</u> adopts the common law rule that an obligee must object to a tender using a commonly accepted method of payment if the obligee insists upon payment in legal tender, stating the following:

> **§ 249.  When Payment Other Than By Legal Tender Is Sufficient**
> Where the payment or offer of payment of money is made a condition of an obligor's duty, payment or offer of payment in any manner current in the ordinary course of business satisfies the requirement unless the obligee demands payment in legal tender and gives any extension of time reasonably necessary to procure it.

<u>Restatement (Second) of Contracts</u> § 249 (1981).  Then, in Comment *a* to § 249, the Restatement (Second) goes on to state that a further demand and extension of time is not required when the agreement specifically requires payment in legal tender.  Comment *a* reads in its entirety:

---

[1]  **§ 41-02-59. (2-511) Tender of payment by buyer--Payment by check.**
1.    Unless otherwise agreed, tender of payment is a condition to the seller's duty to tender and complete any delivery.
2.    Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender and gives any extension of time reasonably necessary to procure it.
3.    Subject to the provisions of this title on the effect of an instrument on an obligation (section 41-03-36), payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment.

Comment:
*a. Rationale.*  Ordinarily a party whose performance or offer of performance has been rejected is not entitled to a reason for its rejection (Comment a to § 248). However, money claims are so generally paid by means other than legal tender that, absent a specific demand, the debtor is not likely to suppose that an insistence on legal tender is the reason behind a refusal to accept payment or offer to pay by check or in some other manner current in the ordinary course of business. Moreover, if the debtor is informed that this is the reason for rejection, he can ordinarily obtain legal tender and cure his defective performance or offer of performance, at least if he is given a reasonable extension of time. This Section, therefore, states an exceptional rule applicable to such cases. What manner of payment is current in the ordinary course of business depends on the nature of the transaction involved. Whether payment or an offer of payment must be in money is beyond the scope of this Section, and is to be determined by the rules of Chapter 9 on interpretation, including those on usage (§§ 221, 222) and course of dealing (§ 223). Cf. Comment *b* to § 238. <u>If the contract explicitly requires payment in legal tender, this requirement will be given effect as a demand for legal tender given in advance of the time for performance, and renders any further demand or extension of time unnecessary</u>.

(underlining added).

Does the last sentence of Comment *a* mean that no objection is required to a nonconforming tender when the agreement specifically requires payment in cash or legal tender, or does it simply mean that an obligee is not required  to point out the specific grounds for an objection that may otherwise be required?  Notably, the Restatement (Second) does not cite any authority for what it states in the last sentence of Comment *a*, and, to the extent it means the former, there is authority to the contrary.  See <u>Associates Discount Corp. v. Gentry</u>, 96 S.E.2d 640, 640-41 (Ga. Ct. App. 1957) (contract requirement that payment be by legal tender was waived when no objection was made to tender of a United States postal money order); <u>State v. Agnosti</u>, 294 P.2d 769, 774 (Cal. Dist. Ct. App. 1st Dist. 1956) (option requirement for payment in "lawful money of the United States" was waived when timely objection to payment by warrant was not made and citing 6 <u>Williston on Contracts</u>, § 1819, Rev. Ed. for authority); <u>cf.</u> <u>Margulus v. Mathes</u>, 90 N.E.2d at 256 (payment by certified check was insufficient when the agreement required payment in legal tender,

but the court suggested that the obligor would have had a reasonable amount of time to obtain cash if a request had been made after the obligee objected to the certified check).

Also, there is authority that an objection is required to a nonconforming tender when some other mode of payment, such as a certified or cashier's check, is required. In Bacchetta v. Conforti, 484 N.Y.S.2d 1 ((N.Y. Sup. Ct. App. Div. 1985), a tenant entered into a subscription agreement for the purchase of her apartment. The agreement required that payment be made by either a "certified check or official bank check drawn on a New York City bank which is a member of the New York Clearing System." Instead of making payment in the manner required by the agreement, the tenant made arrangements for a wire transfer on the eve of the deadline for making payment, but the other party refused to provide the account information required to complete the transfer. A few days later, and after the deadline for making payment had passed, the tenant tendered a banker's check. The trial court concluded that the attempt to wire the money was not a sufficient tender because it did not comply with the agreement and that the subsequent banker's check came too late. However, the appeals court in Bacchetta disagreed, stating in part the following:

> The "wire-transfer" tender, though not in strict conformance with the payment terms of the subscription agreement, was sufficient to require defendants to suggest or demand that a certified check be made from Burbank's corresponding New York bank in time for the closing.

Id. at 3.

Finally, there is other authority which suggests that an obligee may be required to object to a tender of payment that does not conform to the specific requirements of a contract. For example, 86 C.J.S. Tender § 20 states, in part, the following:

> As a general rule objections to the medium in which tender is made may be waived, and this rule has been incorporated into some statutes.

9

> If no specific objection to the form of the tender is made at the time of tender, the objection is waived. Thus, the right to object that tender was not in money is waived where a tender is refused because of a specific objection but not because tender is not made in lawful money, or the kind of money or property specified in the contract.
>
> An objection to the medium of payment may not be disregarded, although the real motive for refusing the tender is to get rid of the contract.
> *Checks*,
>
> An objection to tender by check is waived unless it expressly made at the time of the purported tender. An objection by the payee to a check as an unacceptable medium of tender must be made substantially contemporaneously with its delivery.
>
> A payment by check, absent a specific objection to the check as an unacceptable medium of tender, constitutes a valid tender.

(database updated March 2012) (footnotes omitted); <u>see also</u> Richard Lord, 28 <u>Williston on Contracts</u> § 72:41 (4th ed. database updated May 2011) (hereinafter "Lord, <u>Williston on Contracts</u>"). But, it is not clear this extends to a nonconforming tender in acceptance of a mere offer or in exercise of an option.

### 3.  The North Dakota Supreme Court decisions in <u>Motschman</u> and <u>Nygaard</u>

<u>Motschman</u> is the most recent case in which the North Dakota Supreme Court has relied upon § 9-12-18.  In that case, defendant offered to purchase plaintiff's mineral acres and forwarded a mineral deed for his signature along with a sight draft.  After plaintiff executed both the original deed and a corrective deed, defendant forwarded a check in final payment, at which point plaintiff claimed he intended only to lease the mineral acres and not sell them.  Plaintiff then sued defendant asking the court to declare that no sale had been completed.  He argued, among other things, that there had been a failure of consideration.  On appeal, the North Dakota Supreme Court rejected this argument, stating:

> [¶ 13] Consideration does not fail or become void merely because a party refuses to cash a check tendered as payment in performance of the contract. If Motschman objected to the *form* of payment, i.e., a check instead of legal tender, he

was obligated to object to the mode of the offer of performance at the time it was made. See N.D.C.C. § 9-12-18; cf. N.D.C.C. § 41-02-59(2) ("[t]ender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender"). Thus, "[t]he fact that a cashier's check was tendered instead of currency is not fatal, for the tender of currency was waived by not objecting to the form of the tender on this ground." Ugland v. Farmers' & Merchants' State Bank of Knox, 23 N.D. 536, 546, 137 N.W. 572, 575 (1912). Motschman did not object to the form of payment.

Id. at ¶ 13.

Oasis argues that Motschman is controlling here. However, in Motschman, there was no requirement specifying a particular mode of payment. Also, Motschman did not involve an attempted exercise of an option. And what creates some uncertainty about whether the North Dakota Supreme Court would apply § 9-12-18 in a case where not only a particular mode of payment is required, but also an option is involved, is the court's earlier decision in Nygaard, which was not mentioned in Motschman.

Like in this case, Nygaard involved an attempted exercise by a lessee of an option to extend an oil and gas lease. In Nygaard, the lessee forwarded a five-day sight draft to the lessor approximately three weeks prior to expiration of the option, and, just as in this case, the lessor took no action and let the deadline for exercising the option expire before communicating that the tender was insufficient. The lessor claimed the lease required payment in cash. Nygaard, ¶¶ 1-4.

Ultimately, the North Dakota Supreme Court in Nygaard applied the rule set forth in § 249 of the Restatement (Second) of Contracts discussed earlier. The court concluded that the lessor should have asserted a timely objection to the sight draft if he wanted payment in legal tender and that his objection after expiration of the option was "untimely and ineffective." Id. at ¶¶ 5-12.

What in Nygaard creates uncertainty with respect to this case is not its conclusion that an objection to the tender of the sight draft was required, but rather a subsidiary point that was decided

in reaching that conclusion.  The lessor contended that the lease specifically required payment in cash to exercise the option.  And, rather than holding it did not make a difference with respect to the lessor's obligation to object to the mode of payment, the court analyzed the option language and concluded it did not specifically require payment of cash.  Id. at ¶¶ 12-13.   And it appears the court did this because of the suggestion in Comment *a* to Restatement (Second) of Contracts § 249 discussed earlier that an objection would not be required if an agreement specifically required payment in legal tender.    In its discussion of Restatement § 249, the court quoted portions of Comment *a* and then went on to state the following:

> [¶ 9] Section 249 provides an appropriate way of construing offers of payment required by contracts, which, like the one involved here, do not "explicitly require[] payment in legal tender," Restatement (Second) of Contracts § 249 cmt. a (1981).

Id. at ¶¶ 8-9.

Not surprisingly, the Frandsons argue that implicit in the court's discussion in Nygaard is that an objection to a tender of payment in exercise of an option is not required when it does not conform to the option's specific requirements for how payment is to be made.  However, as will be discussed in more detail below, the problem with that argument is that Nygaard is not directly on point since the court held that the option did not require a specific form of  payment, and any implicit suggestion that an objection would not have been required if it had was merely *dicta*.  Also, and perhaps more importantly, the court did not address the applicability of § 9-12-18, which, apparently, was not argued by the parties.

### 4.    Frandsons' argument that § 9-12-18 does not apply to options

Frandsons offer two reasons for why § 9-12-18 does not apply to options.   First is that an option (including an option to renew embedded in a lease) is nothing more than an offer under North

Dakota law, and, as a consequence, precise and exact compliance with an option's terms is required for its exercise.  E.g., Langer v. Bartholomay, 2008 ND 40, ¶ 21, 745 N.W.2d 649 ("Langer"); Western Tire, Inc. v. Skrede, 307 N.W.2d 558, 562-63 (N.D. 1981) ("Western Tire").  Second is the use of the word "creditor" in § 9-12-18.  The Frandsons argue that this makes the statute inapplicable here because Oasis's tender of payment in exercise of the option was for the purpose of acquiring additional contractual rights and not to satisfy an outstanding debt or other obligation.[2]

While these arguments are not without logical force, the North Dakota Supreme Court has applied § 9-12-18 in at least one case involving the exercise of an option.  Haugland v. Hoyt, 267 N.W.2d 803 (N.D. 1978).   In addition, the court suggested in another that the statute would have applied if the only objection to the tender had been to the mode of payment as opposed to the amount.  Kuhn v. Hamilton, 138 N.W.2d 604, 608 (N.D. 1965).  Finally, § 9-12-18 was derived from a comparable California statute (Cal. Civ. Code § 1501) that also uses the term "creditor,"[3] and the California courts have applied its statute to option agreements, notwithstanding the lack of a

---

[2]  The most common definition of the word "creditor" is that it is a person to whom a debt is owed.  See, e.g., Black's Law Dictionary  pp. 332-333 (5th ed. 1979); Webster's Third New International Dictionary Unabridged p. 553 (1965).  However, the term has also been used more broadly to mean a person who possesses the right to require the performance of any legal obligation arising out of contract, quasi-contract, delict, or tort.  See id.  And, while it may not make a difference in this case, it appears that § 9-12-18 employs the latter, broader meaning given:  (1) the provisions of § 1-01-19 ("Except as otherwise defined and used in Title 13, everyone who owes to another the performance of an obligation must be called a debtor and the one to whom that person owes it must be called a creditor."); (2)  the similar use of the term in a number of other sections in Title 9 of the North Dakota Century Code, which addresses legal obligations  arising as a matter of law and contract; and (3) the fact that some form of §§ 1-01-19 and 9-12-18 have been in existence since the days of the Dakota Territory before North Dakota became a state.  See Sonneysn v. Akin, 97 N.W. 557, 561 (N.D. 1903) ("An examination of the several sections above quoted [including the predecessor to § 1-01-19] makes it plain that the Legislature has broadened the common meaning of the words "debtor" and "creditor" so as to include all persons from whom or to whom obligations are due, whether arising from contract or imposed by law"); Compiled Laws of the Dakota Territory §§ 2104 & 3474 (1887).

[3]  The Code Revisor's notes to N.D.C.C. § 9-12-18 indicate that it was derived from Cal. Civ. Code § 1501. The differences between the present versions of the two statutes appear to be stylistic only, and the early version of North Dakota's statute read exactly the same as California's present statute.  Compare Compiled Laws of the Dakota Territory § 3474 (1887) and Revised Code of North Dakota § 5260 (1905) with Cal. Civ. Code § 1501.

preexisting obligation.  E.g., Riverside Fence Co. v. Novak, 78 Cal. Rptr. 536, 540 (Cal. Ct. App. 4th Dist. 1969); Layton v. West, 76 Cal. Rptr. 507, 509 (Ct. App. 1st Dist. 1969); Hohener v. Gauss, 34 Cal. Rptr. 656, 658 (Dist. Ct. App. 1st Dist. 1963).[4]

Consequently, it is likely that the North Dakota Supreme Court would reject the distinctions that the Frandsons argue here with respect to the lack of a preexisting obligation and this being an option requiring exercise by performance and conclude that they are not a bar to the application of § 9-12-18.[5]  See Riverside Fence Co., 78 Cal. Rptr. at 540 (discussing the fact that California's statute applies to options, even when the option requires that it be exercised by performance and not just a promise to perform, and citing other California cases).[6]

Finally, § 9-12-18 is not inconsistent with the North Dakota cases holding that strict compliance with an option's requirements is required to exercise an option; it merely imposes an implied-in-law waiver in cases where it requires an objection be made to a nonconforming tender. If a timely objection is made, strict compliance is still required.[7]

---

[4] Because many North Dakota statutes are derived from California law, the North Dakota Supreme Court has stated that California decisions construing similar statutes are "entitled to respectful consideration" and "may be persuasive and should not be ignored."  E.g., Western Nat. Mut. Ins. Co. v. University of North Dakota, 2002 ND 63, ¶ 11, 643 N.W.2d 4 (quoting earlier decisions).

[5] There is no disagreement over the fact that the option in this case required exercise by tender of payment as opposed to simply giving notice of exercise.

[6] Arguably, the Frandsons were "creditors" in the sense that they were owed money upon exercise of the option, even though it was contemplated that the obligation would be satisfied upon exercise.  In addition, it probably makes little sense to differentiate here between options that are exercised upon performance and those that only require notice of exercise.  Finally, even a certified check can be dishonored, and if that had occurred here, the Frandsons would still have been owed money and could have sued to collect, although it appears the suit would be against the certifying bank to enforce the instrument, unless, for example, Oasis had forged the certification.  See N.D.C.C. §§ 41-03-36(1) (3-310), 41-03-48 (3-411), & 41-03-51(3) (3-414).

[7] For this reason alone, N.D.C.C. § 1-02-08 does not trump the requirements of § 9-12-18 as the Frandsons have argued.

14

**5.      Frandsons' argument that § 9-12-18 does not apply where the mode of performance has already been agreed upon**

The Frandsons also argue that § 9-12-18 does no more than codify the common law rules governing when an obligor is required to object to a tender of performance and that <u>Nygaard</u> is persuasive authority for the fact that no objection is required when the parties have already agreed upon a particular mode of performance.  While <u>Nygaard</u> does muddy the water, there are several reasons why the North Dakota Supreme Court would conclude that § 9-12-18 requires a timely objection even when the parties have agreed upon a specific mode of performance.

First, § 9-12-18 on its face requires an objection when a person has a problem with a mode of performance that could be corrected at the time and is broader than either the common law rule expressed in <u>Restatement (Second) of Contracts</u> § 239 or its UCC counterpart, which in North Dakota is N.D.C.C. § 41-02-59(2).  <u>See</u> Lord, <u>Williston on Contracts</u> at § 72:41.  This, coupled with the lack of any limiting language, are reasons alone for applying § 9-12-18, even when there is a prior agreement requiring a specific mode of performance.  <u>E.g.</u>, <u>Walsvik v. Brandel</u>, 298 N.W.2d 375, 377 (N.D. 1980) ("Where the terms of a statute are positive and unambiguous, exceptions not made by the Legislative Assembly cannot be read into law.").

Second, there is nothing illogical or unfair in construing § 9-12-18 exactly how it reads.  This case is a good example.  If the Frandsons had timely objected to the uncertified check, Oasis would have had sufficient time to replace it with a certified one prior to the expiration of the option.  And if that had been done, the tender would have met the option's strict requirements and the Frandsons would have received exactly what they bargained for when they first negotiated the lease. <u>Cf.</u> Lord,

Williston on Contracts at § 72:41.[8]   In addition, even though § 9-12-18 is broader than the

Restatement (Second) of Contracts § 239,  the North Dakota Supreme Court has made clear that it

is limited to objections to the *mode* of performance and does not provide an opportunity for a debtor

to tender less than the amount owed in hopes that the creditor will not object.  Kuhn v. Hamilton,

138 N.W.2d at 608.

Finally, Nygaard's citation with apparent support to Comment *a* of § 249 of the Restatement

(Second) of Contracts is of questionable precedential value to the extent it is inconsistent with

N.D.C.C. § 9-12-18.  This is because the North Dakota Supreme Court has made clear that the

common law does not apply where there is a controlling statute.  E.g., Bornsen v. Pragotrade, LLC,

2011 ND 183, ¶ 14, 804 N.W.2d 55 (applying  N.D.C.C. § 1-01-06).

### 6.     The applicability of § 9-12-18 in this case

Having concluded that § 9-12-18 applies to options, including those that require exercise by

a specific mode of performance, the only remaining question is whether its application to the facts

of this case resulted in an implied-in-law waiver of the Frandsons' right to payment by certified

check.  And here there appears to be no question but that it does.  For even if the Frandsons had

taken two weeks to decide what they should do before communicating their objection to the lack of

certification of the check, which would have been more than a reasonable amount of time, Oasis

---

[8]   Although not in the context of options, Professor Lord states that there are several situations in which the courts should not hesitate to require an objection to a tender of performance, including:

> the obligee rejects a tendered performance without stating a reason for the rejection and the obligor, had it been notified of the reason for the rejection, could have made a proper tender within the time set for performance under the contract

* * * *

> the obligee rejects a tendered performance without stating a reason for the rejection and the performance consists of the payment of money

* * * *

Lord, Williston on Contracts at § 72:41.

would have had ample opportunity to correct its nonconforming tender by replacing its uncertified check with a certified one.  In other words, in the language of § 9-12-18, the Frandsons' objection was one that "could have been obviated at that time" if it had been timely made.[9]  Finally, Oasis has tendered proof that its check would have been good had it been presented for collection and the Frandsons have not disputed this evidence.

Without conceding they had a duty to respond to Oasis's tender, the Frandsons argue that they did effectively reject the tender by not countersigning and returning Oasis's letter as Oasis had requested.[10]  But even if that is true, their "rejection" did not comply with § 9-12-18's requirement of communicating an objection specific to the mode of performance.  See Ugland v. Farmers' & Merchants' State Bank of Knox, 137 N.W. 572, 575 (N.D. 1912) ("The fact that a cashier's check was tendered instead of currency is not fatal, for the tender of currency was waived by not objecting to the form of the tender on this ground."); Hohener v. Gauss, 34 Cal. Rptr. at 658 (holding that a similar statute in California required a specific objection).

The Frandsons also argue that, even if Oasis was excused from failing to tender a certified check prior to expiration of the option, it should have tendered a certified check within a reasonable time after becoming aware of the Frandsons' objections.  However, "[w]hen a right is waived, the 'right is gone forever and cannot be recalled.'"  Bernhardt v. Harrington, 2009 ND 189, ¶13, 775 N.W.2d 682  (quoting Meyer v. Nat'l Fire Ins. Co., 67 N.D. 77, 89, 269 N.W. 845, 852 (1936).  In

_____

[9]  Whether or not the statute would have required the Frandsons to give Oasis additional time if, for example, Oasis had tendered its uncertified check on the final day for exercising the option and there was not time to cure the nonconforming tender prior to expiration of the option is a question not before the court.  However, it appears an argument could be made that the statute would not apply in that instance.

[10]  Oasis suggests that its letter only requested confirmation of receipt of the tender, but that is patently not correct given the text immediately preceding the space left for the countersignatures, which  provides for an acknowledgment of the extension of the lease.

addition, the Frandsons' letter to Oasis after the deadline for exercising the option expired made clear that a tender of a certified check at that point would not be accepted.  That being the case, Oasis was not required to perform an idle act.  See Murry v. Lett, 136 S.E.2d 348, 350 (Ga. 1964); Hohener v. Gauss, 34 Cal. Rptr. at 658; Fiers v. Jacobson, 211 P.2d 968, 974 (Mont. 1949); N.D.C.C. 31-11-05(23) (stating that one of the maxims of jurisprudence is that the "law neither does nor requires idle acts");  cf. Alerus Financial, N.A. v. Western State Bank, 2008 ND 104, ¶ 30, 750 N.W.2d 412.

In summary, the Frandsons' failure to timely object to the uncertified check constituted an implied-in-law waiver under § 9-12-18 of the option's requirement for tender of a certified check, and the Frandsons' objection after the deadline for exercising the option was untimely and ineffective.  And since there was no other problem with Oasis's tender, the court concludes it validly exercised the option.

### D.    Implied-in-law waiver based upon a common law requirement equivalent of N.D.C.C. § 9-12-18

Even if the North Dakota Supreme Court were to conclude that N.D.C.C. § 9-12-18 does not apply in cases such as this because of the use of the word "creditor," it likely would conclude that a similar requirement exists as a matter of common law for those situations in which the statute does not explicitly govern.

### E.    Estoppel

While this case is most appropriately disposed of on waiver grounds, the court will address Oasis's estoppel argument in the event it should later become material.  The primary difference between estoppel and waiver here is that estoppel requires consideration of both parties' conduct, while waiver focuses only on that of the waiving party.  See, e.g., Sanders v. Gravel Products, Inc.,

18

2008 ND 161, ¶10, 755 N.W.2d 826; <u>see generally</u> 28 Am. Jur. 2d <u>Estoppel</u> § 35 (Database updated Feb. 2012).

### 1.    Governing law

N.D.C.C. § 31-11-06 governs the doctrine of equitable estoppel in North Dakota as follows:

**§ 31-11-06. Estoppel by declaration, act, or omission**
When a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

Relevant here is the fact that the silence can be a basis for estoppel under North Dakota law, but only if there was a duty to speak out. <u>E.g.</u>, <u>Muhammed v. Welch</u>, 2004 ND 46, ¶ 20, 675 N.W.2d 402 ("For an estoppel to arise from silence, the silence must be accompanied by a duty to speak out, reasonable reliance on the silence, and resulting prejudice."); <u>Ray Co., Inc. v. Johnson</u>, 325 N.W.2d 250, 254 (N.D.1982); <u>Baird v. Stephan</u>, 52 N.D. 568, 588, 204 N.W. 188, 195 (1925). Presumably, this duty could arise from a statutory or common law rule, such as § 9-12-18 or a common law equivalent. In addition, the North Dakota cases state that a duty can arise when a person by his silence, intentionally or through culpable negligence, induces another to believe that certain facts exist and the failure to speak out would be unconscionable under the circumstances. <u>See</u> <u>id.</u>

### 2.    Oasis's arguments for why the Frandsons had a duty to speak out

#### a.    Patricia Frandson's call to Oasis

Oasis argues that Patricia Frandson's phone call created a duty to speak out. Essentially, Oasis's argument is that, by questioning its right to renew the lease and not at the same time complaining about the lack of certification of the check, Frandson left the impression that Oasis's tender was otherwise satisfactory. Oasis argues that this duty existed even if Frandson had not

reviewed the lease prior to making the call, given that she was a party to the lease and was bound to know its contents.

The court is not so sure. Frandson made her call within a day or two after receipt of Oasis's tender. The call was limited to a discussion of whether Oasis could extend the lease, which reasonably would have suggested that Frandson had not recently reviewed it. To conclude from this preliminary conversation that the Frandsons were satisfied with the tender appears to be a stretch. Moreover, Oasis appears to have a bigger problem with respect to Frandson's call being a basis for estoppel, and that is proving Oasis relied upon it. This point will be addressed in more detail below.

### b. Frandsons' lack of response to Oasis's tender generally

Oasis argues that the Frandsons remaining silent after Patricia Frandson's call and sitting on its check for some five weeks also created a duty to speak out. The Frandsons disagree and cite to the following principles governing options and contract offers:

(1)   An option to renew a lease under North Dakota law is a mere offer and acceptance requires strict compliance with the offer's requirements. E.g., Langer, 2008 ND 40, ¶ 21; Western Tire, 307 N.W.2d at 562-63; Fries v. Fries, 470 N.W.2d 232, 234 (N.D.1991) ("An option is a mere offer, and acceptance thereof must be made within the time allowed, and in minute compliance with its terms, or the optionee's rights thereunder will be lost, substantial compliance being insufficient to constitute an acceptance."). In Langer, the North Dakota Supreme Court explained the reason for requiring strict compliance with the option's requirements as follows:

> Courts generally construe the attempt to exercise an option strictly and require exact compliance because the optionee is free to exercise

the option if he chooses, but an optionor is bound to perform if the
option is properly exercised.

Langer, at ¶ 21.  In Cummings v. Bullock, 367 F.2d 182, 186 (9th Cir. 1966), the

Ninth Circuit expressed the same rationale for requiring strict compliance with an

option's requirements even when "[t]he result may seem harsh, and the rules applied

are technical." Id. at 186.  Similarly, in Deal v. Consumer Programs, Inc., 470 F.3d

1225, 1233 (8th Cir. 2006), the Eighth Circuit concluded that application of a

covenant of good faith and fair dealing to excuse strict compliance with an option's

requirements would be antithetical to the law applying to options.[11]  Finally, those

courts which have addressed the issue have held that tender of an uncertified check,

when an option requires a certified one, is not strict compliance.  JW Refrigeration

& Air Conditioning, Ltd. v. Charles Young Construction Co., Inc., No. 86-0059A,

1987 WL 109891 (D. Guam App. Div. July 16, 1987); Beecher v. Morse, 282 N.W.

226, 227-228 (Mich. 1938); cf. Asian American Bank & Trust Co. v. Dermenjian,

63 Mass. App. Ct. 1111, 825 N.E.2d 583 (Table), 2005 WL 900886, **2-3 (2005)

(concluding that a bank draft was sufficient to satisfy the requirement for tender of

a certified check, but only because the bank, as the optionee, was both the drawer

and drawee of the tendered draft).

---

[11]  The North Dakota Supreme Court has refused so far to recognize an implied covenant of good faith and fair
dealing for contracts other than those pertaining to insurance and those governed by the Uniform Commercial Code,
which imposes the obligation as a matter of law.  See Cavendish Farms, Inc. v. Mathiason Farms, Inc., 2010 ND 236,
§§ 7-8, 792 N.W.2d 500; WFND, LLC v. Fargo Marc, LLC, 2007 ND 67, § 17, 730 N.W.2d 84 ("Courts must be careful
when considering good faith, however, as it does not imply 'an everflowing cornucopia of wished-for legal duties.'")
(quoting United States v. Basin Elec. Power Coop., 248 F.3d 781, 796 (8th Cir.2001)).

(2)     A nonconforming tender in exercise of an option is nothing more than a counteroffer. E.g. Matrix Properties Corp. v. TAG Investments, 2002 ND 86, ¶ 10, 644 N.W.2d 601 ("An attempt to exercise an option that deviates from the terms of the option acts as a rejection of the option and counteroffer."); see JW Refrigeration & Air Conditioning, Ltd. v. Charles Young Construction Co., Inc., 1987 WL 109891, at ¶ 2 (tender of an uncertified check in exercise of an option requiring a certified one was a mere counteroffer).

(3)     Since the law does not normally require a response to an offer, silence will not constitute acceptance, except in exceptional circumstances.  See B.J. Kadrmas Inc. v. Oxbow Energy, LLC, 2007 ND 12, 727 N.W.2d 270 (recognizing the general rule of law that mere silence and failure to reject an offer when it is made do not normally constitute acceptance, citing 17A Am. Jur. 2d Contracts § 103 (1991), but recognizing there may be exceptions); Restatement (Second) of Contracts § 69 & Comment *a* (1981) (stating in Comment *a* that "Acceptance by silence is exceptional."); cf. Deal v. Consumer Programs, Inc., 470 F.3d 1225 at 1233 (optionor was under no obligation to assure optionee of performance or respond to her requests that it do so).

The Frandsons argue that, applying these principles here, Oasis's tender did not meet the strict requirements of the option.  Hence, according to their argument, it was only a counteroffer to which a response is normally not required and mere silence cannot be deemed acceptance.

In addition, the Frandsons argue there are no extraordinary circumstances in this case that would give rise to an exception to these well-accepted principles.  They point to the fact that the

only thing discussed during the initial phone call by Patricia Frandson was Oasis's right to extend the lease and nothing was said about Oasis's check, much less whether the tender would be honored. Also, they contend they did communicated their rejection of Oasis's tender by not countersigning and returning Oasis's letter indicating an agreement to the tender as Oasis had requested. They also argue that Oasis could have at any time checked its bank statements to see that they had not cashed its check.

While the Frandsons's arguments are substantial, North Dakota has decided to provide relief from strict application of the principles upon which they rely with its adoption of § 9-12-18. Further, even if § 9-12-18 did not technically apply, the court believes that the North Dakota Supreme Court would conclude that the force of the circumstances created a duty to speak out under the particular circumstances of this case.  Cf. B.J. Kadrmas Inc. v. Oxbow Energy, LLC, 2007 ND 12, ¶13 (recognizing there are exceptions to the general rule that mere silences does not constitute acceptance of an offer).[12]  These circumstances include:  (1) the Frandsons' only objection was to the mode of tender; (2) the Frandsons could have received the strict compliance they had bargained for prior to the option expiring if they had communicated a timely objection; and (3) unlike a naked

---

[12]  In B.J. Kadrmas, the North Dakota Supreme Court observed generally that:

   [¶ 13] "It is a general rule of law that silence and inaction, or mere silence or failure to reject an offer when it is made, do not constitute an acceptance of the offer. However, under some circumstances, silence and inaction operate as an acceptance, as where, under the circumstances, an inference of assent is warranted, or at least where, under the circumstances, such an inference is required or is necessary." 17A Am.Jur.2d Contracts § 103 (1991) (footnotes omitted) (citing Lechler v. Montana Life Ins. Co., 48 N.D. 644, 186 N.W. 271 (1921)). "[W]here the relations between parties have been such as to justify the offerer in expecting a reply, or where the offeree has come under some duty to communicate either a rejection or acceptance, his failure to communicate his rejection or to perform this duty may result in a legal assent to the terms of the offer." Lechler, 48 N.D. at 653, 186 N.W. at 274. "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting." N.D.C.C. § 9-03-25.

2007 ND 12, ¶13.  The court then went on to conclude that the defendant in that case had an affirmative duty to respond to plaintiff's offer because defendant was aware that plaintiff was expending money in performance based on a steady stream of reports and invoices plaintiff was submitting.  Id. at ¶¶ 14-19.

offer, there was an existing contractual relationship between the parties, and Oasis had provided consideration for the option to renew by performing its lease obligations.[13]

### 3.    The remainder of the estoppel elements

Simply proving that the Frandsons had a duty to speak out, however, is not enough for purposes of estoppel.   At the very least, Oasis must also prove reasonable reliance and prejudice. Ellis v. North Dakota State University, 2009 ND 59, ¶¶ 18-19, 764 N.W.2d 192;  Muhammed v. Welch, 2004 ND 46, at ¶ 20;  Knauss v. Miles Home, Inc., 173 N.W.2d 896, 906 (N.D. 1969)

---

[13]   Oasis also cites to cases holding that there is an obligation to return a check that is not going to be negotiated, and this is another reason why silence here was not enough. See, e.g., Sheldon Builders, Inc. v. Trojan Towers, 63 Cal. Rptr. 425 (Ct. App. 2nd Dist. 1967).  However, there is authority to the contrary, as well as authority holding that return of a check is not required if notice of nonacceptance is provided or if no demand for return of the check has been made. See, e.g., Kelly v. Kowalsky, 442 A.2d 1355, 1357 (Conn. 1982);  Besco Enterprises, Inc. v. Carole, Inc., 78 Cal. Rptr. 645, 647 (Ct. App. 1st Dist. 1969); 1 Am. Jur. 2d Accord and Satisfaction § 19; see generally Creditor's retention without negotiation of check purporting to be final settlement of disputed amount as constituting accord and satisfaction, 42 A.L.R.4th 117(1985).  Most of the cases involve payments tendered in satisfaction of existing contractual obligations and not checks tendered in exercise of options or acceptance of offers.  See id.  Further, in a number of cases where it is stated that the check should have been returned, there appears to have been additional factors at play, such as an implied duty to object to the defective performance of a contractual obligation, estoppel, or statutes or common law rules requiring a response to a tender in a particular situation.  See Watson v. Chapman, 55 N.W.2d 555, 559 (Ia. 1952);  McGown v. Cobb, 32 So.2d 36, 38-39 (Ala. 1947); see generally 42 A.L.R.4th 117 (1985).  Finally, in those cases holding there is a duty to return a check, there is little agreement as to the time in which it must be returned, with most of the cases stating it is whatever is reasonable under the circumstances.  See, e.g., Miller v. Montgomery, 77 N.M. 766, 427 P.2d 275 (1967) (five weeks was not an unreasonable amount of time and citing other cases); Hanz Trucking, Inc. v. Harris Bros. Co., Crestline Division, 138 N.W.2d 238, 244 (Wis. 1965) (six weeks not unreasonable); 1 Am. Jur. 2d Accord and Satisfaction § 20 (Database updated Feb. 2012);  42 A.L.R.4th 117, §§ 6[a]-[b]](1985).

While there does not appear to be a North Dakota case that has addressed the issue, North Dakota has a statute that appears not to require the return of a check unless a demand is made:

§ 9-12-27. Creditor as gratuitous depositary.  If anything is given to a creditor by way of performance which the creditor refuses to accept as such, the creditor is not bound to return it without demand, but if the creditor retains it, the creditor is a gratuitous depositary thereof.

This statute is derived from California law, and at least one California court has similarly construed its statute. Besco Enterprises, Inc. v. Carole, Inc., 78 Cal. Rptr. 645, 647 (Ct. App. 1st Dist. 1969).  However, if the check is not returned, it appears that some other form of notice of nonacceptance would need to be provided under the California cases  in order to avoid retention of the check being deemed an accord and satisfaction.  Id.  It remains to be seen whether, or under what circumstances, there might be a similar obligation under North Dakota law to communicate the nonacceptance of a check that is neither negotiated nor returned.  However, if there is widespread agreement that a payee is obligated in all instances to either return a check or give notice of its nonacceptance, it strikes the court as being odd as to why this is not clearly addressed in the UCC provisions governing negotiable instruments.  Moreover, the maker of the check has options, including requesting that the check be returned or destroyed or stopping payment on the check.

(denying claim of estoppel where party was unable to show that it actually relied upon the other party's silence).

Here, the prejudice element has clearly been satisfied in that (1) there was more than sufficient time for Oasis to have replaced its uncertified check with a certified one had the Frandsons timely communicated their objection to Oasis's tender, and (2) Oasis would lose out on the benefits of the lease extension if relief was not provided.  But what is not clear from the evidence that has been proffered is whether Oasis in fact relied upon the Frandsons' silence.

When Oasis's land administrator was deposed, she could not remember Patricia Frandson's phone call, and Oasis did not present any notes, records, or other internal documents suggesting it had been relied upon.  As for the Frandsons' five weeks of silence thereafter, it appears two inferences are possible from the evidence that has been proffered.  One is that Oasis's land administrator sent out the uncertified check well in advance of the option's deadline, and the reason that neither she nor Oasis generally took no further action was the assumption that the Frandsons would timely communicate any objection. Given the requirements of § 9-12-18 and the apparent reasons for its adoption, this would be a reasonable assumption.  The second possibility, however, is that Oasis's land administrator sent out the tender believing it to be sufficient because of her mistaken belief that certified checks were no longer available.  Then, upon receipt of FedEx's confirmation of delivery, which she received the same day delivery was made, she, and Oasis more generally, simply forgot about the matter until receipt of the Frandsons' letter after the expiration of the option.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary

determination on the merits." Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir.1983).  Further, each party is entitled to have the facts and inferences construed in its favor with respect to the opposing party's motion. E.g.  A. Brod, Inc. v. SK & I Co., L.L.C., 998 F. Supp. 314, 320 (S.D.N.Y.1998).  At this point, the court is not convinced there is no triable issue with respect to whether Oasis in fact relied upon the Frandsons' silence.

### F.   Oasis's  equitable argument

Aside from its arguments of waiver and estoppel, Oasis argues that the North Dakota Supreme Court in Langer recognized that a court can exercise its equitable powers and excuse strict compliance with an option's requirements in cases involving contracts for real estate and leases. The court cited its earlier decision in Western Tire as authority for a court excusing an untimely exercise of an option where the delay was slight, the delay had not prejudiced the other party, and strict enforcement of the option's requirements for timely exercise would be unconscionable. Langer, 2008 ND 40, ¶ 23 (citing  Western Tire, 307 N.W.2d at 562).

While the court believes that the Frandsons waived their right to a certified check by not making a timely objection to Oasis's tender and that estoppel may also apply, there is substantial doubt whether the North Dakota Supreme Court would provide equitable relief in this case if  the elements of waiver or estoppel could not be satisfied.   As already discussed, the North Dakota Supreme Court has consistently held that strict compliance with an option's provisions is required, and clearly there are valid and legitimate reasons why a party would want the additional certainty that a certified or cashier's check would provide.  And, while the court in Langer and Western Tire suggested that equitable relief might be available in exceptional cases involving real estate to excuse

strict compliance, the court in both cases enforced the strict requirements for exercise of the options and refused to grant equitable relief.  Langer, at ¶¶ 23-24; Western Tire, 307 N.W.2d at 562.

Here, the mere fact that the Frandsons stood to benefit from the lack of a valid exercise of the option by being able to lease the acreage to someone else for better terms does not strike the court as being unconscionable.  If the shoe had been on the other foot and Oasis had concluded that the property was not worth developing, there is no reason to believe it would have renewed the lease just to confer additional economic benefit on the Frandsons.  Cf. Western Tire, 307 N.W.2d at 562. Also, one of the situations in which the courts have excused strict compliance is when the party exercising the option has expended substantial sums in development of the real estate in anticipation of an extension of a lease.  Langer, at ¶ 23; see generally 49 Am. Jur. 2d Landlord and Tenant § 186 (Database updated Feb. 2012).  In this case, there is no evidence that Oasis has done so with respect to the acreage in question here.   In fact, the reason Oasis had to exercise its option to renew as to the selected acreage was because it was not otherwise being held by production.

## III.   ORDER

Based on the foregoing, Oasis's Motion for Summary Judgment (Doc. No. 17) is **GRANTED** and the Frandsons' Motion for Summary Judgment (Doc. No. 15) is **DENIED**, and it is hereby further **ORDERED, ADJUDGED, and DECLARED** as follows:

1.   The Frandsons' failure to timely object to Oasis's tender of its uncertified check in exercise of the option to renew the lease dated March 30, 2005, resulted in an implied-in-law waiver of the requirement that the tender of the option be by certified check. As a consequence, Oasis's tender of payment effectively exercised the option to renew the lease dated March 30, 2005, and the lease was thereby renewed.

27

2.    Oasis is declared and adjudged liable to the Frandsons in the amount of $15,820.31

on account of the exercise of the option.

**JUDGMENT SHALL BE ENTERED ACCORDINGLY.**

Dated this 27th day of April, 2011.


*/s/  Charles S. Miller, Jr.*
Charles S. Miller, Jr.
United States Magistrate Judge